THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

JAMES PAUL ALLEN, :
:
    Plaintiff, :
: Civil Action
v. : No. 5:06-cv-151(CAR)
:
HALE BURNSIDE and :
CALVIN RAMSEY, :
:
    Defendants. :
_____ :

**ORDER ON REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Recommendation of the United States Magistrate Judge that Defendants' Motion for Summary Judgment be denied. Defendants have filed an objection to the Recommendation. Having reviewed the Recommendation and the Defendants' objections, and having investigated the matter *de novo*, this Court agrees with the recommendation that summary judgment be denied as to Defendant Calvin Ramsey, but disagrees with the recommendation as to Dr. Hale Burnside. Accordingly, and for the reasons set forth below, the Recommendation is adopted in part and rejected in part. Pursuant to this Order, summary judgment is **GRANTED** as to claims against Dr. Burnside and **DENIED** as to claims against Mr. Ramsey.

The record in this case presents undisputed evidence of significant delays in the treatment of Plaintiff's hepatitis. Plaintiff was admitted to Men's State Prison (MSP) in October 2004 so that he could obtain treatment. He was examined by Dr. Burnside on December 2, 2004. Dr. Burnside requested a consultation with a specialist to determine whether a liver biopsy was indicated. On

1

January 27, 2005, the specialist, Dr. Richard Presnell, recommended a biopsy. Plaintiff did not receive the biopsy until December 12, 2005, nearly eleven months later. Based on the results of the biopsy, Dr. Presnell determined that Plaintiff's condition was amenable to antiviral drug treatment. On January 30, 2006, Dr. Burnside ordered Plaintiff to begin a course of treatment with the drugs Pegasys and Ribavirin. At the time he filed his complaint on May 11, 2006, Plaintiff claimed that he had yet to receive any treatment. The medical records indicate that Plaintiff may have finally been able to begin his treatments in October 2006, at which time he refused based on concerns that he needed another liver biopsy. In short, it is reasonable to infer from the records that nearly two years passed from the time that Plaintiff was transferred to MSP to receive treatment for his hepatitis until the time that MSP finally provided treatment for his hepatitis.

To establish a violation of the Eighth Amendment as a result of inadequate medical care, a prisoner must prove that the prison officials were "deliberately indifferent" to his serious medical need. Estelle v. Gamble, 429 U.S. 97 (1976). Deliberate indifference "has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

Although Plaintiff has filed no response to Defendants' motion for summary judgment, Defendants must still meet the initial burden of showing by reference to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is an absence of evidence to support the essential elements of Plaintiff's claims. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). Where a motion for summary judgment is unopposed, the district court cannot base its decision on the mere fact that the motion is unopposed, but must consider the merits of the motion . U.S. v. One Piece of Real Property

Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). The Court is therefore required to review at least the evidentiary materials submitted in support of the motion for summary judgment to determine whether the moving party has met its burden of showing that there is no genuine issue of material fact. Id. Upon review of the evidence on file in this case, it is apparent that Defendants have met their initial burden with regard to Dr. Burnside, but not with regard to Ramsey. The evidentiary materials before the Court present genuine issues of material fact that preclude judgment as a matter of law as to Defendant Ramsey.

The record does not support a finding of deliberate indifference on the part of Dr. Burnside. To the contrary, the record shows that Dr. Burnside did everything he could have done. Dr. Burnside examined Plaintiff on December 2, 2004, and submitted him for consultation with a specialist to determine whether a liver biopsy was called for. The specialist recommended a biopsy on January 27, 2005. There is no evidence that Dr. Burnside had anything to do with the delay in obtaining the biopsy. Dr. Burnside examined Plaintiff again on March 10, June 15, June 24, August 28, and October 29, 2005. His medical notes suggest some frustration with the delay in Plaintiff's treatment. In the Medical Encounter Form for the June 15 visit, Dr. Burnside re-submits the recommendation for a liver biopsy. Taking into account the stereotypical challenges in reading doctors' handwriting, his notes appear to read that requests for the biopsy had been denied by someone else three times. Affidavit of Edward H. Burnside, M.D. (Doc. 21), Ex. D-1, p. 11.

After the biopsy in December, Dr. Presnell recommended antiviral treatments for Plaintiff. Dr. Burnside ordered on January 30, 2006 that Plaintiff begin to receive the course of drug treatments recommended by Dr. Presnell. Again, Dr. Burnside's notes suggest frustration with the administration's failure to provide the treatment ordered by the physicians. A March 8, 2006 report

3

from Dr. Burnside states that Plaintiff had not yet begun the treatment ordered in January. Id. at 44. Dr. Burnside also entered a note regarding the treatment on the Physician's Orders form dated March 8, 2006, which he concludes with the order, "Please start ASAP." Despite Dr. Burnside's order, the treatment was never started. There is no evidence to show that Dr. Burnside was in any way responsible for the delays in Plaintiff's treatment.

With regard to Defendant Ramsey, however, there are genuine issues of material fact. Ramsey is the Medical Administrator at MSP. As Medical Administrator, he cannot authorize or refuse treatments for inmates. Treatment decisions are left to physicians or other certified medical personnel. It is the responsibility of the Medical Administrator to see to it that the orders of physicians are carried out. The evidence before the court raises questions as to whether Ramsey saw to it that the orders of Dr. Burnside and the other physicians were carried out with regard to Plaintiff. As the Magistrate Judge has pointed out, Ramsey has offered no satisfactory explanation for the delay of nearly one year from the time that Dr. Presnell ordered a liver biopsy for Plaintiff until the time that Plaintiff finally received the biopsy. After the biopsy was conducted, Plaintiff never received the drug treatments that were ordered by the physician. The various explanations Defendants offer for this second delay are disputed in the evidence and create a genuine issue of material fact.

Defendant Ramsey has provided one explanation for the delay that appears to be false. In his affidavit, Ramsey has testified that the medications were available to Plaintiff beginning in January 2006, but Plaintiff failed to appear for the treatment. Affidavit of Calvin Ramsey, ¶ 20. This statement is contradicted by Plaintiff's statement in his complaint that Ramsey told him he could not have the treatments because they were too expensive. It is also contradicted by the

4

grievances that Plaintiff filed on January 19, February 21, and March 21, 2006, which are attached as exhibits to the complaint. In each of these grievances Plaintiff asked to receive the treatment. Each of the grievances was denied. On the January 19 grievance, the Counselor's Response states "According to Mr. Ramsey the doctor denied inmate's Allen [*sic*] hepatitis C treatment." On the February 21 grievance, the Counselor's Response states that Plaintiff "does not qualify for Hepatitis treatment – this was denied by GDC." These grievances and the responses to them refute Ramsey's testimony that the medicines were made available to Plaintiff. Ramsey's testimony is also contradicted by the affidavit of Dr. Burnside, who testifies that he ordered the medical treatments on January 30, but that they were cancelled on February 1. Burnside Affidavit, ¶ 33, 34. Ramsey's testimony is further refuted by the medical records, which show that Dr. Burnside ordered the treatments to start in January 2006, then expressed frustration in March 2006 that they still had not begun, and ordered the prison to start the treatments "ASAP." This evidence creates a jury question as to whether Ramsey denied the treatments to Plaintiff in spite of the doctors' orders.

In addition to the claim that Plaintiff refused to take the medication that was made available for him, Defendants offer another rationale for the denial of treatment, contending that the medications were not provided because of concerns that Plaintiff was soon to be paroled and would be unable to complete the full course of treatment. This contention is also disputed by evidence in the record that creates a genuine issue of material fact. The first mention in the record of a possibility of parole is in a note by Dr. Burnside on a May 1, 2006 Physician Encounter Form, which notes that Plaintiff "may be getting out in [December]." Burnside Aff., Ex. D-1, p. 46. This first mention of parole occurs more than three months after Plaintiff was supposed to have begun his treatments, and just ten days before he filed the present lawsuit. It does not explain why Plaintiff

did not receive the treatments between January and May. In addition, Plaintiff has testified that he told Dr. Burnside he would be able to continue the treatments himself upon release and that he requested that the treatments begin. Allen Dep., p. 32. The possibility of parole, then, may be found to lack credibility as a rationale for the denial of treatments after May.

As an alternate basis for summary judgment, Defendants argue that Plaintiff has failed to "place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." Defendants' Objection (Doc. 36), p. 7 (quoting Hill v. DeKalb Regional Youth Development Center, 40 F.3d 1176, 1188 (11th Cir. 1994). In other words, Defendants contend that Plaintiff has not presented evidence to meet his burden of proving there was a risk of serious harm as a result of delay in his treatment. Plaintiff, as a *pro se* litigant, has presented no affidavit from a physician, or other "medical evidence," to prove that hepatitis C is a serious illness and that a delay in treatment can result in serious harm. Defendants, for their part, have not submitted any testimony from Dr. Burnside or any other doctors to the contrary.

It is unlikely that any doctor would submit an affidavit to the contrary, because hepatitis is commonly known to be a serious medical need, and there is sufficient evidence for a reasonable jury to conclude that Ramsey was aware that it was. Courts have defined a "serious medical need" as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (quoting Hill v. Dekalb RYDC, 40 F.3d at 1187). In this case, Plaintiff's hepatitis had been diagnosed by physicians as mandating treatment. In addition, the Eleventh Circuit has held that hepatitis specifically meets the definition of a serious medical need that "if left unattended, poses a substantial risk of serious harm." Id.

Even where treatment is eventually provided, an inordinate delay in treatment can constitute deliberate indifference. Whether a delay in treatment is constitutionally tolerable "depends on the nature of the medical need and the reason for the delay." Farrrow v. West, 320 F.3d 1235, 1247 (11th Cir. 2003) (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994)). In Farrow, the defendant dentist prescribed dentures for the plaintiff, but plaintiff did not receive the dentures for nearly eighteen months, during which time the plaintiff suffered bleeding and sore gums, the inability to eat solid food, and weight loss. In this case, Plaintiff has not offered any expert medical testimony as to the nature of progressive liver damage that may occur over time if hepatitis is left untreated, and has described only weight loss as a physical symptom that he experienced while awaiting treatment. This evidence in this case is nevertheless sufficient to support a jury finding that the delay was evidence of deliberate indifference. Hepatitis is objectively a more serious medical need than the need for dentures, even in the absence of readily observable symptoms. When the seriousness of the medical condition is combined with the "recognized need for. . . treatment, . . . the sheer length of the delay involved, and the lack of any reasonable explanation for the inordinate delay" (See Farrow, 320 F.3d at 1247), it would be reasonable for a jury to conclude that the delay manifested deliberate indifference to Plaintiff's serious medical needs.

Given the holding of Brown v. Johnson, qualified immunity does not protect Defendant Ramsey from liability. Qualified immunity protects public officials from civil liability unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A right is clearly established

if there is existing law that would give the defendant "fair warning" that his conduct would deprive the plaintiff of a constitutional right:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U.S. 730, 739 (2002). In this case, it is clearly established by Eleventh Circuit precedent that hepatitis is a serious medical condition and that delay in treatment can result in serious harm. Brown was published in 2004, before the year before Plaintiff's doctors first recommended a liver biopsy. If Ramsey is responsible for the delays in treatment, he had fair warning to know that this delay was in violation of clearly established law.

The evidence before the Court is sufficient, therefore, to support a jury finding that Defendant Ramsey was deliberately indifferent to Plaintiff's serious medical need, in violation of Plaintiff's rights under the Eighth Amendment. In the face of such evidence, summary judgment would be inappropriate.

**SO ORDERED**, this 28th day of September, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE